# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# EASTERN DIVISION

DONNIE B. JAMES,
ADC #89050                                                                                    PLAINTIFF

V.                                    2:11CV00161 BSM/JTR

DR. DON BALL,
Correctional Medical Services, Inc., et al.                                 DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States Chief District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the

United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3. An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## I. Introduction

Plaintiff, Donnie B. James, is a prisoner in the East Arkansas Regional Unit ("EARU") of the Arkansas Department of Correction ("ADC"). In this *pro se* § 1983 action, he alleges that Defendants Dr. Don Ball, Nurse Quibble Butler, Health Services Administrator Juanita Stell, and Corizon, Inc. failed to provide him with

adequate medical care.[1]  *See* docket entries #2 and #10.

Defendants have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts.[2]  *See* docket entries #48, #49, and #50. Plaintiff has filed a Response, a Brief in Support, and a Statement of Disputed Facts.  *See* docket entries #58, #59, and #60.

## II. Discussion

**A.     Exhaustion of Administrative Remedies**

Defendants argue that several of the claims raised against them should be dismissed, without prejudice, because Plaintiff failed to properly exhaust his administrative remedies.

The Prison Litigation Reform Act provides, in pertinent part, that: "No action

---

[1] The Court has previously dismissed Plaintiff's claims against Defendant Kelley.  *See* docket entry #55.

[2] It is well settled that summary judgment should only be granted when the record, viewed in a light most favorable to the nonmoving party, shows that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of informing the court of its basis for the motion and identifying the parts of the record that show lack of a genuine issue. *Celotex,* 477 U.S. at 323. To defeat a motion for summary judgment, the nonmoving party must go beyond the pleadings and establish "by affidavits, or by the depositions, answers to interrogatories, and admissions on file," that specific facts show a genuine issue for trial exists.  *See* Fed R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324.

shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

The PLRA requires inmates to: (1) fully and properly exhaust their administrative remedies as to each claim in the complaint; and (2) complete the exhaustion process prior to filing an action in federal court. *See Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Additionally, the United States Supreme Court has emphasized that: "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90–91. Thus, to satisfy the PLRA, a prisoner must fully comply with the specific procedural requirements of the incarcerating facility.

*Id.*

To fully and properly exhaust administrative remedies, an ADC prisoner must: (1) file an informal resolution with the medical staff; (2) file a grievance with the Health Services Administrator, if the attempt at informal resolution is unsatisfactory; and (3) appeal the Health Services Administrator's decision to the ADC Deputy/Assistant Director. *See* docket entry #50, Ex. C; *see also* ADC Admin. Dir. 10-32 § IV (Jan. 1, 2011).

Importantly, the ADC exhaustion policy states that "[g]rievances must specifically name each individual involved for a proper investigation and response to be completed by the ADC" and that "[i]nmates who fail to name all parties during the grievance process may have their lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties." ADC Admin. Dir. 10-32 § IV(C)(4). Finally, the grievance forms themselves remind prisoners that they must specify the "personnel involved." *Id.*

The Court will address whether Plaintiff has exhausted his administrative remedies against each separate Defendant.

**1. Defendant Stell**

Plaintiff contends that Defendant Stell failed to take proper corrective action after reviewing several of his grievances about the alleged lack of adequate medical

care. Defendant Stell argues that this claim must be dismissed because Plaintiff failed to fully exhaust any grievances that specifically named her and/or asserted that she was failing to take proper corrective action. *See* docket entry #50, Ex. C. Plaintiff does *not* dispute Defendant Stell's argument. *See* docket entries #59 and #60.

Thus, Plaintiff's inadequate medical care claim against Defendant Stell should be dismissed, without prejudice, due to a lack of proper exhaustion. *See Jones,* 549 U.S. at 211 (explaining that: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"); *Barbee v. CMS,* Case No. 10-1891, 2010 WL 3292789 (8th Cir. Aug. 23, 2010) (unpublished opinion) (holding that a court may not reach the merits of any unexhausted claims).

## 2. Defendant Corizon

Plaintiff alleges that Defendant Corizon, Inc. had an unconstitutional practice of grossly understaffing the EARU infirmary.[3] Defendant Corizon, Inc. argues that Plaintiff failed to fully exhaust any grievances raising that claim. *See* docket entry #50, Ex. C.

In response to that argument, Plaintiff points to several of his fully exhausted grievances complaining about delays he experienced in receiving medical care. *See*

---

[3] Corizon, Inc. is a private healthcare provider that has contractually agreed to provide medical services to ADC prisoners. *See* docket entry #50, Ex. B.

docket entry #59, Exs. 2, 4, and 6 through 10). However, in those grievances, Plaintiff alleged that the delay in care was due to retaliation or prison employees throwing away his sick call requests. *Id.* He did *not* allege, as he does in this lawsuit, that the delays were caused by Defendant Corizon, Inc. understaffing the EARU infirmary. *Id.*

Thus, Plaintiff's inadequate medical care claim against Defendant Corizon, Inc. should be dismissed, without prejudice, due to a lack of proper exhaustion.

### 3. Defendants Ball and Butler

Plaintiff alleges that Defendants Ball and Butler provided him constitutionally inadequate medical care when they: (1) failed to properly flush a port-a-cath in his shoulder; (2) improperly treated neck and peripheral pain; and (3) refused to prescribe quietus for the treatment of tinnitus. The parties *agree* that Plaintiff properly exhausted his administrative remedies as to his first two medical care claims. *See* docket entries #49, #50, #59, and #60. In contrast, Defendants Ball and Butler argue that Plaintiff failed to properly exhaust his administrative remedies as to third medical care claim.

In response to that argument, Plaintiff points to grievance EA 11-219, in which he alleged that unspecified individuals had failed to prescribe quietus for the treatment of tinnitus. *See* docket entry #59, Ex. 1. However, grievance EA 11-219 is not *proper*

exhaustion because Plaintiff failed to: (1) specifically name either Defendant Ball or Butler; and (2) appeal the denial of that grievance to the ADC Deputy/Assistant Director. *See Jones,* 549 U.S. at 218 (explaining that a prisoner must fully comply with the specific exhaustion requirements of the incarcerating facility).

Plaintiff also points to grievances EA11-638 and EA11-820. *See* docket entry #59, Exs. 9 and 10. In those two grievances, Plaintiff complained about a *delay* in responding to four sick call requests he filed, in April and May of 2011, seeking treatment for unspecified medical problems. Importantly, those two grievances did *not* specifically: (1) name Defendants Ball or Butler; or (2) allege a failure to receive quietus for the treatment of tinnitus. *Id.*

During the final appeal of those two grievances, the ADC Deputy/Assistant Director briefly summarized the medical care Plaintiff had received for *numerous* medical problems.[4] *Id.* When doing so, the ADC Deputy/Assistant Director noted that, on June 15, Plaintiff was seen by Nurse Floyd (who is *not* a Defendant in this lawsuit) in response to his complaints of tinnitus. *Id.* Although it is unclear, it appears that Plaintiff believes that by mentioning the June 15 examination, the ADC Deputy/Assistant Director somehow reached the merits of his tinnitus claim against

---

[4] The ADC Deputy/Assistant Director ultimately concluded that Plaintiff's complaints regarding delays in receiving medical care were either resolved or were without merit.

*Defendants Ball and Butler. See Hammett v. Cofield,* 681 F.3d 945, 947-48 (8th Cir. 2012) (clarifying that "the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits").

The Court disagrees for two reasons. First, the ADC Deputy/Assistant Director mentioned that Plaintiff was seen by Nurse Floyd, and *not by Defendants Ball or Butler.* Additionally, the ADC Deputy/Assistant Director merely noted that Plaintiff was seen in response to his complaints of tinnitus. She did not review, at all, the *appropriateness* of the care Plaintiff received for tinnitus, or any alleged denial of his request for quietus.

Accordingly, Plaintiff's claim that Defendants Ball and Butler failed to provide him with adequate medical care for tinnitus should be dismissed, without prejudice, due to a lack of proper exhaustion.

**B.   Judgment as a Matter of Law**

Defendants Ball and Butler argue that they are entitled to judgment, as matter of law, on the merits of Plaintiff's claims that they provided him with constitutionally inadequate medical care for his port-a-cath and neck/peripheral pain.

To prevail on an inadequate medical care, a prisoner must prove that: (1) he had an objectively serious medical need; and (2) prison officials subjectively knew of, but deliberately disregarded, that serious medical need. *Estelle v. Gamble*, 429 U.S.

97 (1976); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

### 1.     Port-a-Cath

Sometime in 2008, Plaintiff had a port-a-cath inserted into his left shoulder during chemotherapy treatment for nasopharyngeal cancer. *See* docket entry #50, EX. A. Plaintiff contends that when he finished his chemotherapy treatment, Dr. Masood, who is private oncologist, recommended that the port-a-cath remain in his shoulder for five years and that it be flushed every thirty days.[5] *See* docket entry #59.

In February of 2011, Dr. Masood examined Plaintiff and determined that he was in "complete remission" with no "clinical or radiological evidence of local recurrence." *See* docket entry #50, Ex. A at 14. Accordingly, Dr. Masood released Plaintiff from treatment. *Id.* However, he did not mention whether the port-a-cath should remain in Plaintiff's shoulder or how often it should be flushed. *Id.*

From March of 2011 until July of 2011, Plaintiff filed several sick call requests asking that his port-a-cath be flushed. *Id.,* Ex. A. Although it is unclear, it appears that it was flushed only once during that time period. *Id.*, Ex. A at 44 and 46; Ex. D at 4.

---

[5] There is no evidence in the record to support Plaintiff's contention. However, because Defendants do no contest it, the Court will accept the truth of that assertion.

On July 13 and 18, 2011, Defendants Ball and Butler told Plaintiff that the port-a-cath should be removed because it was no longer needed and continued flushing unnecessarily created a risk of infection and sepsis.[6] *Id.* Ex. A at 47 to 51. Plaintiff refused to have the port-a-cath removed. *Id.*

Accordingly, Defendant Ball ordered a consult with Dr. Atiq, who is a private oncologist. *Id.* Dr. Atiq determined that the port-a-cath "may be removed or flushed."[7] *Id.,* Ex. A at 55. Nevertheless, Plaintiff has refused to have the port-a-cath removed.

Plaintiff believes that Defendants Ball and Butler provided him with constitutionally inadequate medical care when they failed to regularly flush his port-a-cath. However, as pointed out by Defendants, Plaintiff has not suffered *any harm* as a result of that alleged failure. *See* 42 U.S.C. § 1997e(e); *Royal v. Kautzky,* 375 F.3d 720, 723 (8th Cir. 2004) (providing that a prisoner cannot recover compensatory damages absent a physical injury). Specifically, there is no evidence in the record that

---

[6] An April 15, 2011 CT of Plaintiff's neck demonstrated no evidence of cancer reoccurrence. *Id.*

[7] Plaintiff makes the confusing argument that Dr. Atiq's opinion is inadmissible hearsay because Defendants have summarized his findings, rather than providing a copy of his actual recommendation. *See* docket entry #59. To the contrary, Defendants have produced a copy of Dr. Atiq's handwritten findings, which he signed on August 31, 2011. *See* docket entry #50, Ex. A at 55. Those findings were later reviewed by Defendant Ball on September 14, 2011.

the port-a-cath ever became clogged or infected. Additionally, Plaintiff conceded, in his March 1, 2012 deposition, that he was not suffered any physical problems as a result of his port-a-cath not being regularly flushed. *See* docket entry #50, Ex. D at 8.

Instead, Plaintiff makes the highly speculative argument that he *might* need to use the port-a-cath sometime in future *if* his cancer returns, and that Defendants' failure to properly maintain the port-a-cath will make that impossible. This argument is flawed for two reasons.

First, as previously discussed, Dr. Masood's February 2011 examination and the April 2011 CT scan ordered by Defendant Ball revealed no evidence of cancer recurrence. Additionally, Defendant Ball and Dr. Atiq have determined, in their professional medical judgment, that the port-a-cath may be removed. *See Langford,* 614 F.3d at 460 (explaining that a prisoner's disagreement with a medical provider's treatment decisions does not rise to the level of a constitutional violation); *Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir. 2008) (explaining that "inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment"). Plaintiff has chosen not to do so at his own peril.

Accordingly, Plaintiff's claim that Defendants Ball and Butler provided him

with inadequate medical care for his port-a-cath should be dismissed, with prejudice.

### 2. Neck and Peripheral Pain

On March 16, 2011, Plaintiff was examined by Defendant Ball in response to his complaints of chronic pain, tingling, and numbness in his neck, head, and arms. *See* docket entry #50, Ex. A. Defendant Ball noted that Plaintiff had good and equal strength in his arms. *Id.* An x-ray revealed that Plaintiff had cervical arthritis and degenerative disc disease, both of which were caused by aging. *Id.* at 41. Defendant Ball decided to treat the condition with medications and rest. *Id.*

Over the next six months leading to the filing of this lawsuit, Plaintiff was seen in the prison infirmary at least eight times by a physician or advanced nurse practitioner. *Id.* During those encounters, he was prescribed aspirin and nortriptyline as pain killers, baclofen as a muscle relaxant, and naproxen as an anti-inflammatory. *Id.* Additionally, he was assigned a lower bunk, released from work detail, and allowed to rest. *Id.*

Defendant Ball's decision to treat Plaintiff's neck and peripheral arm pain conservatively, with rest and medication, does not rise to the level of a constitutional violation. *See Dulany,* 132 F.3d at 1240 (holding that: "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating

that she did not feel she received adequate treatment"); *Logan v. Clarke*, 119 F.3d 647, 649-50 (8th Cir. 1997) (finding that prison doctors were not deliberately indifferent when they treated the prisoner on "numerous occasions" and "made efforts to cure the problem in a reasonable and sensible manner").

Plaintiff believes he received constitutionally inadequate care because Defendants Ball and Butler did not see him in the infirmary as often as he desired, and there were periodically delays in refilling his various prescriptions. However, Plaintiff has not come forward with *any evidence* demonstrating that he was harmed by these alleged delays in care. *Gibson v. Weber*, 433 F.3d 642, 646-47 (8th Cir. 2006) (explaining that, to avoid summary judgment, an inmate must place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment); *Hines;* 547 F.3d at 920-21 (holding that delays in refilling the prisoners' various prescriptions did not rise to the level of constitutional violation).

Accordingly, Plaintiff's claim that Defendants Ball and Butler provided him with inadequate medical care for his neck and peripheral pain should be dismissed, with prejudice.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (docket entry #48) be

GRANTED.

2. All of Plaintiff's claims against Defendants Stell and Corizon, Inc. be DISMISSED, WITHOUT PREJUDICE.

3. Plaintiff's claim that Defendants Butler and Ball provided him with inadequate medical care for tinnitus be DISMISSED, WITHOUT PREJUDICE.

4. Plaintiff's claims that Defendants Butler and Ball provided him with inadequate medical care for his port-a-cath and neck/peripheral pain be DISMISSED, WITH PREJUDICE.

5. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order and Judgment adopting this Recommended Disposition would not be taken in good faith.

Dated this 18th day of October, 2012.

_____
UNITED STATES MAGISTRATE JUDGE